No. 98-665

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 268

296 Mont. 444

989 P.2d 401

CITY OF MISSOULA,

Plaintiff and Respondent,

v.

LAURENCE I. GILLISPIE,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry G. Sehestedt, Missoula, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer Anders, Bureau Chief, Helena, Montana; Judith L. Wang, Assistant City Attorney, Missoula, Montana

Submitted on Briefs: March 18, 1999

Decided: November 2, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ **Laurence I. Gillispie (Gillispie) was charged and convicted under Montana's order of protection violation statute, § 45-5-626, MCA (1997), in Missoula Municipal**

Court. Gillispie appealed the municipal court judgment and his conviction was affirmed by the Fourth Judicial District Court, Missoula County. Gillispie appeals from the District Court's Order and Memorandum. We affirm.

¶ Gillispie raises two issues on appeal:

¶ (1) Did the Municipal Court have jurisdiction over Gillispie's order of protection violation based on third party contact?

¶ (2) Did Gillispie commit an order of protection violation pursuant to § 45-5-626, MCA (1997), when he attempted to contact his former wife through a third person?

Factual and Procedural History

¶ On October 20, 1993, the Fourth Judicial District Court, Missoula County, issued a permanent injunction, based on stalking in violation of § 45-5-220, MCA (1993), which prohibited Gillispie from contacting his former wife, Bobette Gillispie (Bobette). The court's order of injunction stated that Bobette "needs permanent protection or may otherwise suffer permanent injury or harm and therefore the injunction should be effective permanently." Thus, the court ordered Gillispie to "not contact or attempt to contact Bobette Eilene Gillispie in person, in writing, or by a third person, except by telephone or correspondence through her attorney of record." Gillispie was served, on October 26, 1993, with the permanent injunction.

¶ On November 19, 1997, Gillispie called Mary Jane Stolp, Bobette's mother, in Missoula. Gillispie asked Mary Jane Stolp to give Bobette an offer from him; Gillispie wanted to know whether Bobette would accept payment of $10,000 in full satisfaction of a $50,000 judgment that Bobette had obtained against Gillispie for unpaid child support. Bobette's mother reported the third party contact to the Missoula Police Department. When Missoula authorities investigated the incident, Gillispie admitted that he had called Bobette's mother. Based on the admitted third party contact, Gillispie was charged with an order of protection violation pursuant to § 45-5-626, MCA (1997), in Missoula Municipal Court on November 21, 1997.

¶ Gillispie appeared in Missoula Municipal Court on December 22, 1997, entered a plea of not guilty to the charge, and asked that the matter be set for a jury trial. On January 30, 1998, Gillispie filed a motion to dismiss the charge, arguing that the

district court injunction was no longer in effect on the date of the alleged third party contact. Gillispie's motion to dismiss was denied, on February 19, 1998, by the Municipal Court. On April 9, 1998, Gillispie waived his right to a jury trial and was tried before a municipal court judge, who convicted Gillispie of an order of protection violation under § 45-5-626, MCA (1997).

¶ On April 13, 1998, Gillispie filed a notice of appeal from the municipal court judgment. On appeal, Gillispie argued that his motion to dismiss should have been granted because the permanent injunction was no longer in effect, and that the Municipal Court did not have jurisdiction over the alleged offense. On August 18, 1998, the District Court affirmed the Municipal Court's conviction and remanded the matter for imposition of sentence. Gillispie appeals from the District Court's order.

## Discussion

¶ (1) Did the Municipal Court have jurisdiction over Gillispie's order of protection violation based on third party contact?

¶ Gillispie's challenge to the Municipal Court's jurisdiction involves a question of law. We review a district court's conclusion of law to determine whether its interpretation of the law is correct. State v. Maier, 1999 MT 51, ¶ 74, 293 Mont. 403, ¶ 74, 977 P.2d 298, ¶ 74 (citing Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686).

¶ A municipal court has geographic jurisdiction "coordinate and coextensive" with the jurisdiction of justice courts located in the same county. Section 3-6-103(1), MCA (1997). The criminal jurisdiction of a justice court, and thus a municipal court, extends to misdemeanors "committed within" the county in which the court sits. Section 3-10-303, MCA (1997). An order of protection violation, first offense, is a misdemeanor within the subject matter jurisdiction of a municipal court. Sections 3-6-103(1), 3-10-303(1), and 45-5-626(3), MCA (1997).

¶ The offense at issue occurred in several counties, including Missoula County. Gillispie contends that since neither he nor Bobette were present in Missoula County at the time of the prohibited phone call, he could not have contacted Bobette either directly or indirectly in Missoula County. Therefore, Gillispie argues that the third

party contact offense, having not been "committed within" Missoula County, rendered the Municipal Court without jurisdiction to adjudicate the order of protection violation. We disagree.

¶ Under the terms of the permanent injunction, Gillispie was prohibited from contacting or attempting to contact Bobette "by a third person, except by telephone or correspondence through her attorney of record." The act constituting the offense in this case was Gillispie's attempt to contact Bobette through her mother, a third person. Importantly, Gillispie's phone call was <u>received</u> by Bobette's mother in Missoula. Thus, we agree with the State of Montana (the State) that the Municipal Court was vested with jurisdiction over Gillispie's order of protection violation when the necessary "result" of Gillispie's actions, third party contact by telephone, was "committed within" Missoula County.

¶ In other words, the crime was <u>completed</u>, and thus "committed within" Missoula County. Section 3-10-303, MCA (1997). We hold that the Municipal Court had jurisdiction over the order of protection violation by virtue of the fact that the criminal offense of third party contact was consummated when the phone call was received within Missoula County.

¶ (2) Did Gillispie commit an order of protection violation pursuant to § 45-5-626, MCA (1997), when he attempted to contact his former wife through a third person?

¶ In 1993, the Fourth Judicial District Court issued an order and permanent injunction, pursuant to § 40-4-121, MCA (1993), based on Gillispie's stalking of his former wife, Bobette. Under subsection (7) of § 40-4-121, MCA (1993), a victim who qualified could petition the court for "permanent protection" from the offender, and the court was authorized under appropriate circumstances to "order that the injunction be effective permanently." <u>See</u> § 40-4-121(7), MCA (1993). One ground for issuance of a permanent injunction, found in subsection (8) of the statute, was "credible evidence" of stalking by the offender and the victim's need for permanent protection. <u>See</u> § 40-4-121(8), MCA (1993). The 1993 version of § 45-5-626, MCA, provided that a person commits the offense of violation of a protective order when that person, "with knowledge of the order, purposely or knowingly violates a provision of <u>any order provided for in 40-4-121</u>." Section 45-5-626(1), MCA (1993) (emphasis added).

¶ In 1997, Gillispie violated the permanent injunction's "no contact" through a third party provision when he called Bobette's mother, and was convicted of violation of a permanent order of protection under § 45-5-626, MCA (1997). The 1997 version of § 45-5-626, MCA, provides in pertinent part:

> (1) A person commits the offense of violation of an order of protection if the person, with knowledge of the order, purposely or knowingly violates a provision of <u>any order provided for in 40-4-121 or an order of protection under Title 40, chapter 15</u>. It may be inferred that the defendant had knowledge of an order at the time of an offense if the defendant had been served with the order before the time of the offense. Service of the order is not required upon a showing that the defendant had knowledge of the order and its content. [Emphasis added.]

Section 45-5-626(1), MCA (1997).

¶ Gillispie openly concedes that he knowingly violated the terms of the 1993 permanent injunction. However, he takes the position that the District Court must be reversed and the charge against him dismissed because § 45-5-626, MCA (1997), does not make criminal a violation of the permanent injunction imposed upon him in 1993. Gillispie's challenge to the statutory scheme involves a question of law, particularly, the legislative intent underlying the recent amendments to §§ 40-4-121 and 45-5-626, MCA. We review a question of law to determine whether the trial court's interpretation of the law is correct. <u>Maier</u>, ¶ 74.

¶ In 1995, the Montana Legislature generally revised the laws relating to domestic violence, changed the name of the offense from domestic abuse to partner or family member assault, and provided enhanced criminal penalties against offenders so as to provide broader protections to the victims of such offenses. <u>See generally</u> Act of Apr. 10, 1995, ch. 350,1995 Mont. Laws 1108. In part, the legislature amended § 40-4-121, MCA (1993), and deleted subsections (7) and (8) from the statute. In its place, the legislature enacted Title 40, Chapter 15, which provides generally for the safety and protection of all victims of partner and family member assault, sexual assault, and stalking. <u>See generally</u> §§ 40-15-101 to 40-15-303, MCA. Title 40, Chapter 15 now provides authority for a court to order, under appropriate circumstances, that an order of protection "remain in effect permanently." <u>See</u> § 40-15-204(1), MCA.

¶ Since Title 40, Chapter 15 was not enacted until 1995, Gillispie asserts that the 1993 permanent injunction against him could not be "an order of protection under Title 40, chapter 15." Section 45-5-626(1), MCA (1997). Thus, according to Gillispie, the question becomes whether the 1993 order imposing the permanent injunction was an "order provided for in 40-4-121" in 1997 when the order of protection violation was alleged to have occurred. Section 45-5-626(1), MCA (1997). The answer, as Gillispie urges, is that the 1997 version of § 40-4-121, MCA, provides only for temporary protective orders expiring in one year or less. See § 40-4-121(4)-(7), MCA (1997). Therefore, Gillispie contends that because the Montana Legislature did not amend the plain language of § 45-5-626, MCA (1997), to make criminal violations of permanent protective orders formerly provided for in § 40-4-121, MCA (1993), he cannot be convicted of an order of protection violation pursuant to § 45-5-626, MCA (1997).

¶ The State responds that Gillispie's arguments constitute, in essence, a retroactivity claim. As the State argues, the 1995 amendments to § 40-4-121, MCA (1993), did not retroactively repeal the 1993 permanent injunction because the Montana Legislature did not expressly declare in the 1995 amendments that it was repealing remedies available to domestic abuse victims in 1993. However, Gillispie vigorously disputes the State's position that he is effectively making a retroactivity claim, asserting instead that he is simply making a plain language argument. While Gillispie's claim can be analyzed under the guise of retroactivity, we determine that there is no need to do so. Thus, this Court will not address the State's retroactivity analysis.

¶ Rather, we choose to reject Gillispie's hyper-technical argument on its merits. As mentioned earlier, the District Court had the authority to issue the permanent injunction against Gillispie in 1993. See § 40-4-121(7), (8), MCA (1993). Today, a court would be empowered pursuant to Title 40, Chapter 15 to issue a permanent order of protection. See § 40-15-204(1), MCA. Thus, the question is whether the permanent injunction issued in 1993 pursuant to § 40-4-121, MCA (1993), remained legally in effect until the date of Gillispie's "no contact" violation in 1997. We conclude, for the reasons that follow, that the 1993 permanent order of protection continued to be effective on the date of the prohibited third party contact.

¶ First, the plain language of § 40-4-121, MCA (1997), refutes Gillispie's all-or-nothing approach to this issue. The amended version of the statue authorized a district court to grant the following relief:

(2) As a part of a motion for temporary maintenance, temporary support of a child, or a temporary family support order or by independent motion accompanied by affidavit, <u>either party may request the court to issue a temporary injunction for any of the following relief</u>:

. . . .

(h) <u>providing additional relief available under Title 40, chapter 15</u>. [Emphasis added.]

Section 40-4-121(2)(h), MCA (1997); <u>see also</u> § 40-4-121(4), MCA (1997). By cross-referencing Title 40, Chapter 15, the Montana Legislature clearly intended to permit a court to make a temporary injunction issued under § 40-4-121, MCA (1997), a permanent protective order according to the requirements of Title 40, Chapter 15. Thus, while § 40-4-121, MCA (1997), primarily governs the issuance of temporary protective orders expiring in one year or less, the statute expressly incorporates by reference the authority of Title 40, Chapter 15 to issue permanent orders of protection. In short, § 40-4-121, MCA (1997), and Title 40, Chapter 15 are not mutually exclusive of one another.

**¶ Second and more importantly, in 1997, the Montana Legislature again had occasion to further revise Montana's domestic violence laws. <u>See generally</u> Act of May 1, 1997, ch. 484,1997 Mont. Laws 2576. In particular, as the District Court correctly recognized, the legislature sought to clarify, retroactively, that an order or injunction issued under § 40-4-121, MCA (1993), prior to the 1995 amendments was to remain legally in effect according to the terms and conditions of the order or injunction:**

**Section 2. Temporary order or temporary injunction--continuing effect.** A temporary order or temporary injunction issued under 40-4-121 before October 1, 1995, <u>continues in full force and effect as provided in the order or injunction</u>.

. . . .

**Section 12. Retroactive applicability.** [Section 2] applies retroactively to October 1, 1995. [Emphasis added.]

Act of May 1, 1997, ch. 484, §§ 2, 12, 1997 Mont. Laws 2576, 2578, 2583. October 1, 1995, was the effective date for the 1995 amendments to Montana's domestic violence laws.

¶ **This Court, in determining legislative intent, will construe criminal statutes "with a view to effect their object and to promote justice." State v. Sunday (1980), 187 Mont. 292, 299, 609 P.2d 1188, 1193 (citing State v. Shannon (1976), 171 Mont. 25, 28, 554 P.2d 743, 744). The object of the Montana Legislature's 1995 amendments to Montana's domestic violence laws, which included amending § 40-4-121, MCA (1993), and concomitantly enacting Title 40, Chapter 15, was to**

> move[] orders, currently called Temporary Restraining Orders, from a subsection currently located in a marriage and divorce statute [§ 40-4-121, MCA (1993)] to their own section [Title 40, Chapter 15]. . . . [V]ictim's protections shouldn't be in divorce statutes.

Hearing on SB 278 Before the Senate Judiciary Comm., 54th Legis., 1st Reg. Sess. (Mont. 1995) (statement of Judy Wang, Assistant City Attorney, Chair Missoula Family Violence Council). It is clear that the legislature principally intended, in 1995, to grant broader protection to victims of partner and family member assault without regard to their relationship to the offender. To further that object, Title 40, Chapter 15 was enacted "to promote the safety and protection of all victims of partner and family member assault, victims of sexual assault, and victims of stalking." Section 40-15-101, MCA.

¶ **The goal of affording broader protection to victims of partner and family member assault must guide our resolution of Gillispie's claim. By broadening protections available to such victims in 1995, the Montana Legislature clearly did not intend to do away with any existing orders of protection already in place. Indeed, to emphasize that point, the 1997 amendments expressly declare that an order of protection issued prior to the effective date of the 1995 amendments is to remain legally in effect pursuant to the terms and conditions of that order.**

¶ **While it might be claimed that the legislature intended "Section 2" of the 1997 amendments to apply only to a "temporary" but not to a permanent order of protection issued pursuant to § 40-4-121, MCA (1993), we note that the 1993 version of the statute was captioned "[t]emporary order or temporary injunction" and yet provided authority to issue a permanent order of protection. See § 40-4-121(7), (8),**

**MCA (1993). This Court would achieve a patently absurd result were we to hold that a temporary order of protection issued pursuant to § 40-4-121, MCA (1993), remains legally in effect under the 1997 retroactive amendments, but that a permanent order of protection does not. We refuse to reach such a formalistic construction. "The law respects form less than substance." Section 1-3-219, MCA. Victims of partner or family member assault, whether shielded from further harm by a temporary or a permanent order of protection, are entitled to the same degree of protection.**

**¶ In light of the clear object of the 1995 amendments to strengthen protections for victims of partner and family member assault and the clarification in the 1997 amendments that an order of protection issued pursuant to § 40-4-121, MCA (1993), prior to the effective date of the 1995 amendments is to remain legally in effect, we hold that the 1993 permanent order of protection against Gillispie remained legally in effect at the time of the third party contact incident in 1997 and, therefore, was enforceable against Gillispie according to its terms and conditions. When Gillispie committed third party contact in 1997, he clearly violated the "no contact" provision of the earlier injunctive order, which, according to its own terms, was to "be effective permanently" so as to provide "permanent protection" to Bobette. Therefore, Gillispie was properly charged and convicted of an order of protection violation pursuant to § 45-5-626, MCA (1997), when he admittedly violated the terms of the 1993 permanent order of protection. The remainder of Gillispie's contentions are without merit, and we will not address them.**

**¶ Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ JAMES C. NELSON

No