No. 99-488

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 264

BRIAN McKIRDY, CHAIRPERSON, and

BOARD OF TRUSTEES, ALBERTON JOINT

SCHOOL DISTRICT No. 2, MINERAL COUNTY,

Petitioners and Appellants,

v.

RACHEL VIELLEUX, GREG DANELZ, and

BILLYE ANN BRICKER, SUPERINTENDENTS OF

MISSOULA, RAVALLI AND MINERAL COUNTY SCHOOLS,

and CERTAIN MISSOULA COUNTY RESIDENTS,

Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Mineral,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Terry L. Wolfe, Sol & Wolfe Law Firm, Missoula, Montana

For Respondents:

Michael W. Sehestedt, Deputy Missoula County Attorney; Darla Keck, Datsopoulos, McDonald and Lind, Missoula, Montana

Submitted on Briefs: December 16, 1999
Decided: September 29, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The Alberton Joint School District No. 2 Board of Trustees, and its chairperson, Brian McKirdy (hereinafter Alberton Trustees), appeal from an order issued by the Montana Fourth Judicial District Court, Mineral County, granting summary judgment in favor of school superintendents Rachel Vielleux, Greg Danelz and Billye Ann Bricker of, respectively, Missoula, Ravalli, and Mineral counties, and Certain Missoula County Residents (hereinafter County Superintendents). We affirm.

¶2 The lone issue presented on appeal is whether the District Court made an incorrect conclusion of law when it ruled that the transfer of territory from one K-12 school district to another K-12 school district under the undisputed facts did not require two separate petitions pursuant to state law, and consequently erred by granting summary judgment in favor of County Superintendents.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This controversy commenced in October of 1997 when residents of the Upper Nine Mile Valley in Missoula County petitioned the Missoula County Superintendent of Schools to have the territory in which they resided transferred from the Alberton K-12 School District No. 2 to the Frenchtown K-12 School District No. 40. The Upper Nine Mile territory is located between Frenchtown and Alberton.

¶4 This proposed transfer is related to a failed 1992 petition that sought the same result.

During the course of that prior dispute, the Frenchtown School District's board of trustees temporarily permitted affected Upper Nine Mile students to attend Frenchtown schools if they wished. This arrangement would end, however, at the close of the 1997-98 school year. Unless the petition was approved, the Upper Nine Mile students could no longer attend Frenchtown schools.

¶5 The 1997 petition apparently affected 24 to 26 students, 11 of whom attended Frenchtown schools. According to their "Petition to Transfer K-12," the petitioners claimed that as residents of Missoula County, most of whom worked in Frenchtown and Missoula, it was impractical for their children to be bused to Alberton schools. The petition stated that "Frenchtown [is] much more accessible for parent participation in school and community activities." The petition also addressed the "community" aspect of the Nine Mile Valley. Currently, Upper Nine Mile residents reside in the Alberton School District, while Lower Nine Mile residents reside in the Frenchtown School District. The transfer would therefore unite the Nine Mile area, as well as enhance the Upper Nine Mile's existing ties with Frenchtown, according to the petition.

¶6 The desired transfer met opposition early on from the Alberton School District, which raised the issue of the economic impact that the proposed transfer presented. According to the record, at an estimated taxable value of $358,614, the Upper Nine Mile territory in question represents nearly 14 percent of the total taxable value of the Alberton School District, which according to a Rural Education Center survey is among the poorer school districts in the state. The record indicates that removal of the Upper Nine Mile territory from the Alberton School District property tax base would result in higher taxes for its remaining residents to compensate for the loss, and would lower taxes for those residents of the Upper Nine Mile once they joined the much larger Frenchtown School District. A precise forecast of the economic impact was never determined, and therefore remained in dispute throughout the petition process. Supporters of the transfer, however, adamantly maintained that such economic factors had nothing at all to do with the original purpose of the petition.

¶7 Upon receipt of the petition, the Missoula County superintendent determined that it was valid, pursuant to state law, and scheduled a November 12, 1997 hearing.

¶8 Prior to the hearing, however, the Alberton Board of Trustees requested that the hearing be canceled "because the single petition was invalid, it did not reference MCA 20-6-320, and the letter from Frenchtown Superintendent Hargrove was not sufficient notification of

the intent of the Frenchtown Board of Trustees to accept the territory." This request was denied, and the hearing was conducted as scheduled.

¶9 Following the November 12, 1997 hearing, the petition was approved by a panel of three county school superintendents, representing Missoula, Mineral and Ravalli counties, who are the named Respondents in this action. The superintendent from Ravalli County, pursuant to state law, was chosen as a tie-breaker vote on the transfer. On December 17, 1997, each superintendent filed his or her own set of findings and conclusions. The Mineral County superintendent dissented from the Missoula and Ravalli superintendents, and would have denied the petition for the transfer of territory.

¶10 The issue of the validity of the petition, however, was not disputed among the three superintendents. Regarding the Alberton Trustees' contentions, the Missoula County superintendent found (and the other superintendents agreed) that:

> Only one petition was received although it was clear from the testimony of those in the support of the petition that they were requesting a territory transfer for grades K-12. The filing of a single petition was based on advice from the author of HB 0491, the revised territory transfer bill which passed during the 55th Legislative Session held in 1997.

It is undisputed that as of July 1, 1997, the Alberton School District became a K-12 school district, and that the Frenchtown School District was likewise a K-12 school district. Thus, the panel concluded that:

> Both Alberton and Frenchtown School Districts are K-12 school districts, i.e., their elementary districts have been unified with their respective high school districts to form a single legal entity pursuant to Part 7 of Title 20, MCA, and therefore any territory transfer must be for K-12 students.

¶11 Nevertheless, the panel concluded that the petition as submitted contained some "minor flaws," but were not sufficient to "render the petition invalid." The panel stated that "[i]f indeed there should have been two sets of petitions, the remedy would be to require that the petitioners begin the process anew, this time asking the resident electors to sign in two places rather than one." This, the panel concluded, was not a reasonable request in light of the "clear intent to include grades K-12 in the transfer."

¶12 Alberton Trustees filed for judicial review of the County Superintendents' decision in January of 1998. Alberton Trustees again claimed that the lone petition was deficient pursuant to state law, and that separate petitions were necessary where such a transfer involved both high school and elementary school territory.

¶13 Upon motion by both parties, the District Court granted summary judgment in favor of the County Superintendents on July 7, 1999. Specifically, the court stated that although "the original petitions reference only § 20-6-213, MCA, the contents of the petitions satisfy all of the statutory requirements of said section relating to the transfer of territory from one elementary district to another and all of the statutory requirements of § 20-6-320, MCA, relating to the transfer of territory from one high school district to another."

¶14 The court then concluded that the "original petitions also clearly reference the transfer of territory to another K-12 District, and it is undisputed that the territory sought therein to be transferred was from one K-12 District (Alberton) to another K-12 District (Frenchtown)." Thus, the court concluded that:

> Both the District from which the territory was sought to be transferred and the District to receive said territory having met the statutory definition of a K-12 District as set forth in § 20-6-701(2), MCA, the petitions herein are deemed sufficient, and the decision of the county superintendents is affirmed.

The court apparently referred to the "petition" for territory transfer in the plural form because, as the record shows, numerous copies of the same petition were circulated among residents for the purpose of collecting signatures. Thus, numerous signed "petitions" were submitted to the Missoula County superintendent, and are a matter of record.

¶15 Alberton Trustees appealed the court's order granting summary judgment in favor of County Superintendents.

## STANDARD OF REVIEW

¶16 This Court reviews an order granting summary judgment under Rule 56, M.R.Civ.P., by utilizing the same criteria as the district court. *See Erker v. Kester*, 1999 MT 231, ¶ 16, 296 Mont. 123, ¶ 16, 988 P.2d 1221, ¶ 16. Summary judgment is a remedy which should be granted when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P.

¶17 In this instance, no material facts remain in dispute. The granting of summary judgment turned on whether the County Superintendents were entitled to judgment as a matter of law, pursuant to the relevant statutes. When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *See Hicklin v. CSC Logic, Inc.* (1997), 283 Mont. 298, 301, 940 P.2d 447, 449.

## DISCUSSION

¶18 Alberton Trustees contend that the applicable statutes at issue require that two separate petitions must be submitted to a school superintendent in order to transfer both elementary and high school territories from one K-12 school district to another K-12 school district. It is undisputed that only one petition for the transfer in question was made. Because of this procedural technicality, Alberton Trustees contend that the petition hearing as well as the subsequent decision to transfer the territory are invalid.

¶19 Accordingly, Alberton Trustees raise the following issue:

*19 Whether the District Court erred in affirming a decision to allow the transfer of territory from one school district to another where separate petitions for transfer of the elementary and the high school territories were not used?*

¶20 The relevant portion of the statute in question, according to Alberton Trustees, is § 20-6-213(8), MCA, which provides that a petition "seeking to transfer elementary territory out of or into a K-12 district must be accompanied by a petition to transfer the same territory as high school territory in accordance with 20-6-320." The statute then provides that "[i]n the case of a proposed transfer out of or into a K-12 district, an elementary petition that is not accompanied by the high school petition is invalid for the purpose of subsection (3)." Subsection (3) provides that on receipt of a "valid petition" for a territory transfer, the county superintendent shall: (a) file the petition; (b) set a hearing place, date, and time for consideration of the petition that is not more than 40 days after receipt of the petition; and

(c) give notice of the place, date, and time of the hearing. Alberton Trustees argue that without a valid petition in the first instance, all subsequent action pursuant to subsection (3) is likewise invalid.

¶21 Alberton Trustees also point out that under § 20-6-320(8), MCA, a petition "seeking to transfer high school territory out of or into a K-12 district must be accompanied by a petition to transfer the same territory as elementary territory in accordance with 20-6-213." Likewise, the statute provides that "in the case of a proposed transfer out of or into a K-12 district, a high school petition that is not accompanied by an elementary petition is invalid for the purpose of subsection (3)." Subsection (3) under § 20-6-320, MCA, is identical to subsection (3) under § 20-6-213, MCA.

¶22 Alberton Trustees argue that pursuant to either of the foregoing statutes, two petitions should have been presented to the Missoula County superintendent, one for the elementary school territory and one for the high school territory. They contend that this two-petition requirement is based on a reasonable reading of the plain language of the statutes, and relies on *Skinner Enterprises, Inc. v. Board of Health* (1997), 286 Mont. 256, 274, 950 P.2d 733, 744, as well as other related case law for support of this proposition. In *Skinner*, we provided the following synthesis of the governing rules for construing statutes:

> In construing a statute, this Court must read and construe each statute as a whole so as to avoid an absurd result and to give effect to the purpose of the statute. Indeed, statutes do not exist in a vacuum, [but] must be read in relationship to one another to effectuate the intent of the statutes as a whole. This Court will, if possible, construe statutes so as to give effect to all of them. When more than one statute applies to a given situation, such construction, if possible, is to be adopted as will give effect to all.

*Skinner, 286 Mont. at 271-72, 950 P.2d at 742 (internal citations and quotations omitted). Additionally, it is beyond dispute that, in ascertaining the Legislature's intent, we are bound by plain and unambiguous language used in a statute and may not consider legislative history or any other means of statutory construction. See, e.g., MacMillan v. State Compensation Ins. Fund (1997), 285 Mont. 202, 208, 947 P.2d 75, 78 (citation omitted).*

¶23 The County Superintendents argue, however, that the foregoing subsections--which address elementary and high school territories as separate entities--simply do not apply to the factual circumstances of the Upper Nine Mile petitioners. Rather, the petitioners requested the transfer of combined territory from one K-12 school district into another K-12 district, as defined by § 20-6-701(2), MCA. Accordingly, the County Superintendents on appeal maintain that only one petition is necessary when the transfer involves the transfer of such combined territory. They, too, argue that this result may be derived from the plain and unambiguous language of the statutes in question. They further contend that

the intent of the petitioners was clearly understood by the Missoula County superintendent, who upon receipt of the petition referenced both § 20-6-213, MCA, and § 20-6-320, MCA, in her "notice of hearing," which set forth the November 12, 1997 hearing date and identified the petitioners' precinct as well as provided information concerning the legal description of the proposed territory.

¶24 Therefore, according to County Superintendents, the one petition here satisfies either or both applicable statutes, §§ 20-6-213 and 20-6-320, MCA. In turn, subsection (8) of each statute is applicable only when one of the school districts involved is not K-12.

¶25 The District Court followed the County Superintendents' line of reasoning when it concluded that "[a]lthough the original petitions reference only § 20-6-213, MCA, the contents of the petitions satisfy all of the statutory requirements of said section relating to the transfer of territory from one elementary district to another and all of the statutory requirements of § 20-6-320, MCA, relating to the transfer of territory from one high school district to another."

¶26 This conclusion accords with the conclusion of the county superintendent panel, that "[i]f indeed there should have been two sets of petitions, the remedy would be to require that the petitioners begin the process anew, this time asking the resident electors to sign in two places rather than one." This, the panel concluded, was not a reasonable request in light of the "clear intent to include grades K-12 in the transfer."

¶27 As a starting point, we agree with Alberton Trustees that we must first look to the plain and unambiguous language of all the statutes at issue in determining what the Legislature requires for the valid transfer of territory under the circumstances presented here. We begin this inquiry by acknowledging the undisputed material fact that both the Alberton and Frenchtown school districts are K-12 districts.

¶28 Under § 20-6-701(2), MCA, a K-12 school district "means a high school district with an elementary district that has been attached to the high school district under the procedures provided in this section, with the high school district remaining an organized district under the provisions of 20-6-101 and *other provisions of law* and the elementary district becoming an inactive district under the provisions of 20-6-101" (emphasis added). Neither party argues that this statute is ambiguous.

¶29 Thus, in order to give meaning to all the interrelated statutes under Title 20, Chapter

6, a K-12 school district is a high school district upon which an elementary school district has been attached, and remains, for the purposes of the governing statutes, a high school district. *See also* § 20-6-101(2)(b), MCA (defining "high school district" and stating that a high school district with an "attached" elementary district may provide the education services for an elementary district). In this sense, the term "K-12" serves to characterize the *kind* of high school district in question.

¶30 Accordingly, we conclude that the statute, § 20-6-320, MCA, entitled "Transfer of territory from one high school district to another," applies to the proposed transfer here.

¶31 Turning solely to § 20-6-320(1), MCA, we next observe that the Legislature has plainly and unambiguously provided that the "majority of registered electors of a high school district who reside in territory that is a part of a high school district may petition the county superintendent to transfer the territory in which they reside to another high school district . . ." This is precisely what the petition in question sought in requesting a transfer of "TERRITORY K-12." Next, the statute provides that certain criteria under subsection (1) and (2) be met. It is undisputed that the petition satisfied the criteria under both subsection (1) and (2) under § 20-6-320, MCA, prior to the hearing, although, as identified above, the petition incorrectly provided that the petition conformed to § 20-6-213, MCA, and incorrectly stated the permissible taxable value. Further, Alberton Trustees do not challenge the petitioners' satisfaction of the statutory requirements under either § 20-6-320(1) and (2), MCA, or the same corollary requirements under § 20-6-213 (1) and (2), MCA.

¶32 We are left, then, with subsection (8) under § 20-6-320, MCA. This subsection was added to § 20-6-320, MCA, in 1997. Prior to its adoption, there was no clear codified process for transferring either elementary school or high school territory in or out of K-12 school districts. Further, subsection (8)--under either §§ 20-6-213 or 320, MCA--has not been addressed by this Court, and therefore our interpretation of the statute is one of first-impression. In its entirety, § 20-6-320(8), MCA, provides:

> A petition seeking to transfer high school territory out of or into a K-12 district must be accompanied by a petition to transfer the same territory as elementary territory in accordance with 20-6-213. In the case of a proposed transfer out of or into a K-12 district, a high school petition that is not accompanied by an elementary petition is invalid for the purpose of subsection (3).

Applying the foregoing to the circumstances at hand, obviously the petitioners were trying to transfer "high school" territory out of as well as into a K-12 district, and thus a petition to transfer the same Upper Nine Mile territory--as elementary territory rather than high school territory--was required by this subsection. We therefore conclude that the County Superintendents' argument that § 20-6-320(8), MCA, does not apply to these particular circumstances due to the fact that both territories were K-12 must be disregarded.

¶33 The legal question becomes, therefore, not whether a formal, second petition was required, but whether the petition as found valid by the Missoula Superintendent, satisfied the purpose of the foregoing statute: namely, whether the petition was "accompanied" by an elementary "petition," one that satisfied the corollary requirements of § 20-6-213(1) and (2), MCA.

¶34 Neither § 20-6-213, MCA, nor § 20-6-320, MCA, precisely define what constitutes a "petition." Rather, both statutes provide that first, certain criteria be met before a "petition" may be submitted to a county superintendent, and second, that the "petition" must include certain information in order to be valid. The statues simply do not indicate that in this instance "accompanied" requires a separate petition that in turn must be signed by a majority of registered electors.

¶35 As Alberton Trustees would have it, unless a second separate and distinct petition "accompanied" the high school petition, the entire transfer process was invalid. Under similar circumstances, this Court has refused to abide by such a strict, formalistic approach to statutory interpretation, and have readily applied the maxim: "The law respects form less than substance," pursuant to § 1-3-219, MCA. *See City of Missoula v. Gillispie*, 1999 MT 268, ¶ 27, 296 Mont. 444, ¶ 27, 989 P.2d 401, ¶ 27. Alberton Trustees' position disregards the possibility--which the statutes in question do not forbid--of simply physically combining the two necessary "petitions" into one petition, where the proposed territory itself is already legally combined as K-12 territory.

¶36 The petition in question clearly identifies that the territory is K-12, meaning that any elementary school territory--which as a matter of law was "attached" to the high school district and rendered inactive--would be transferred. The petition actually focuses on § 20-6-213, MCA, which applies to the transfer of elementary school territory. The petition identifies that the "number of K-12 students residing in the territory is 24." Thus, the petition to transfer high school territory was unquestionably "accompanied" by a petition to transfer elementary territory as well. That both petitions appeared on but one sheet of

paper is far from fatal. In keeping with our rules of statutory interpretation, we conclude that the mandate of invalidity, under § 20-6-320(8), MCA, may be invoked only where such a petition entirely fails to recognize the existence of elementary school territory.

¶37 Therefore, under the circumstances we conclude that the petition in question complied with the mandate of § 20-6-320(8), MCA. It would be unreasonable, and far too formalistic to require that two separate petitions must be submitted to the school superintendent, where one petition, clearly identifying the intent to transfer both high school and elementary territory, serves the same function.

¶38 Accordingly, the judgment of the District Court granting summary judgment in favor of the County Superintendents is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY