FILED

November 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0215

DA 15-0215

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 313

IN RE THE PETITION TO TRANSFER
TERRITORY FROM VAUGHN ELEMENTARY
SCHOOL DISTRICT NO. 74, CASCADE COUNTY,
TO POWER ELEMENTARY SCHOOL DISTRICT NO. 30,
TETON COUNTY

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 14-368
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jeffrey A. Weldon, Mary E. Duncan, Felt, Martin, Frazier & Weldon,
P.C.; Billings, Montana

For Appellee:

Elizabeth A. Kaleva, Megan D. Morris, Elizabeth A. O'Halloran, Kaleva
Law Office; Missoula, Montana

Submitted on Briefs:  September 9, 2015
Decided:  November 3, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Power Elementary School District No. 30 (Power School District) appeals an order entered by the Eighth Judicial District Court, Cascade County, affirming an administrative panel's dismissal of a petition for the transfer of territory from Vaughn Elementary School District No. 74 (Vaughn School District) to Power School District. We affirm and address the following issue:

*Did the District Court err by affirming the decision of a panel of county school superintendents to dismiss a school territory transfer petition?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The educational facility in question is the Hillcrest Hutterite Colony Attendance Center, located in Cascade County. The Attendance Center was formed after several colony members petitioned the Vaughn School District's Board of Trustees in February 2013 to open an attendance center for elementary education on the Colony. Vaughn School District ultimately entered into a contract with Hillcrest Colony to provide educational services in exchange for use of a Colony facility, entitled the Hillcrest Colony Attendance Center Agreement. The Agreement provided that "Hillcrest Elementary School shall be operated at all times as a public school of the Vaughn School District . . . ." Vaughn School District employs a full-time teacher and a teacher's aide to staff the Attendance Center. Vaughn School District also provides textbooks, equipment, and teaching supplies for the Attendance Center, and the Administrator of Vaughn

2

School District serves as the chief administrator for the Attendance Center. The Attendance Center opened its doors to students in the late summer of 2013.

¶3 In November 2013, Vaughn School District received a petition, pursuant to § 20-6-105, MCA, requesting the transfer a specified portion of territory (Transfer Territory) from Vaughn School District to the Power School District in Teton County. Because the petition sought a territory transfer involving more than one county, a panel of three county school superintendents was assembled to decide the matter, pursuant to § 20-6-105(10), MCA. The statutory criteria for a transfer petition include the requirement that the requested territory not be "located within 3 miles, over the shortest practicable route, of an operating school in the district from which it is to be transferred." Section 20-6-105(1)(a)(iii), MCA. After receiving briefing on this issue, the superintendent panel determined: "It is the majority opinion of the Panel that Hillcrest Attendance Center is a school based on the information discussed above and operates as any public school in the state of Montana." Because the Transfer Territory was located within three miles of the Attendance Center, the panel dismissed the transfer petition.

¶4 Power School District petitioned for judicial review of the superintendent panel's decision. The District Court affirmed the panel's dismissal of the petition, reasoning that "[t]he [Attendance Center] has been operating as a school since the 2013-2014 school year. In all respects, it is an operating school maintained under state law at public expense." Power School District appeals.

3

**STANDARDS OF REVIEW**

¶5 A ruling on a territory transfer petition "must be upheld unless the court finds that the county superintendent's decision constituted an abuse of discretion under this section." Section 20-6-105(9), MCA. "An abuse of discretion occurs when a tribunal acts 'arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason[,] resulting in substantial injustice.'" *In re Petition to Transfer Territory from Dutton*, 2011 MT 152, ¶ 7, 361 Mont. 103, 259 P.3d 751 (citation omitted). "A decision is arbitrary if it appears to be 'random, unreasonable, or seemingly unmotivated, based on the existing record.'" *Dutton*, ¶ 7 (citation omitted).

¶6 "We review a district court's conclusions of law for correctness." *Dutton*, ¶ 7 (internal citation omitted). "A statutory interpretation is a conclusion of law, which we review to determine whether the district court's interpretation of the law is correct." *State v. Price*, 2002 MT 150, ¶ 15, 310 Mont. 320, 50 P.3d 530.

**DISCUSSION**

¶7 *Did the District Court err by affirming the decision of a panel of county school superintendents to dismiss a school territory transfer petition?*

¶8 Power School District contends that the superintendent panel's decision to dismiss the petition on the ground that the Transfer Territory was located within three miles of an operating school was an abuse of discretion, arguing that the Attendance Center does not constitute an "operating school." Section 20-6-105(1)(a)(iii), MCA. Power School District further asserts that the District Court's interpretation of the governing statute was incorrect.

4

¶9 Section 20-6-501, MCA, provides the following definition of "school": "[U]nless the context clearly indicates otherwise, the term 'school' means an institution for the teaching of children that is established and maintained under the laws of the state of Montana at public expense." While interpreting statutes, a court is simply to ascertain and declare what is in terms or in substance contained therein. *See* § 1-2-101, MCA. "The terms of a writing are jurisprudentially presumed to have been used as they are primarily and generally accepted." *Labatte v. Town of Culbertson*, 282 Mont. 342, 345, 938 P.2d 611, 613 (1997) (applying maxim to interpretation of city code); *see* § 1-4-107, MCA.

¶10 Montana statutes do not provide a definition for an attendance center. An informal description is provided by the Office of Public Instruction (OPI): "An attendance center is a location where students regularly attend school at a location other than the regular school building. The attendance center is effectively part of a specified school of the district. Attendance centers are not specifically defined in law, since they are a part of a school, which is defined." Mont. Office of Pub. Instruction, *Get Answers – Attendance Centers*, opi.mt.gov, http://perma.cc/Q39Q-A59R (last updated May 21, 2010). Throughout the description, OPI refers to an attendance center as a "school," using the terms synonymously: "Because it is a public school that is also part of a school district, an attendance center falls under the accreditation requirements of the school it is a part of." Mont. Office of Pub. Instruction, *Get Answers*. However, while OPI's description

5

gives helpful information about attendance centers generally, it is not conclusive of the legal issue before the Court.

¶11    The operative facts are essentially uncontested.  Under the terms of the Agreement between Vaughn School District and the Hillcrest Colony, the Attendance Center was opened to "operat[e] at all times as a public school of the Vaughn School District," or in other words, as "an institution for the teaching of children" of Vaughn School District. Section 20-6-501, MCA.  The Attendance Center was open to any student in the area, not just colony students.[1]  Vaughn School District employs a teacher and a teacher's aide to staff the Attendance Center, and Vaughn School District had applied for and received funding from OPI for the Attendance Center.[2]  Vaughn School District provides textbooks, teaching supplies, and administrative supervision to the Attendance Center, and is also responsible for providing any additional support services for the Attendance Center students.  In addition, by terms of the Agreement, the Attendance Center is required to meet Vaughn School District policies and standards, including "all State and Federal laws, administrative rules and policies applicable to public schools and all rules and policies of the School District," as well as compulsory enrollment requirements. These facts convince us that the panel's judgment did not exceed the bounds of reason,

---

[1] The Agreement provided that "Enrollment at Hillcrest Elementary School shall also be open to any and all qualified residents of the Vaughn School District."

[2] While the Dissent notes that Vaughn School District applied for and received additional funding for the Attendance Center under the procedure for "Anticipated Enrollment Increase," the funding application stated that the reason for such increased enrollment was the "Opening of Colony Attendance Center."

nor did the panel act unreasonably when concluding that the Attendance Center "currently operates as any public school in the state of Montana."

¶12 Power School District also contends that the District Court "misinterpreted and misapplied operative statutes," arguing that the Attendance Center cannot be an established "school" because it was not opened consistent with the procedures set forth in § 20-6-502, MCA. That statute establishes the procedures for opening or reopening an elementary school, including the requirements that the county superintendent and board of county commissioners approve the opening of the school, and that the superintendent of public instruction likewise approve the opening. *See* § 20-6-502(2)-(4), MCA. Power School District argues that "[t]he District Court's conclusion ignores a significant part of the statutory definition (i.e. that to be a school, the institution must also be *established* under the laws of Montana) and it ignores a more specific statute prescribing what must be done before a school can be opened." We review a district court's interpretation of a statute for correctness. *Price*, ¶ 15.

¶13 The District Court addressed this issue, reasoning:

> The territory transfer panel acknowledged the approval of the county commissioners was missing from the process to open the Hillcrest Colony facility. . . . The Court agrees with the transfer panel, though, that the lack of county commissioner approval does not, ipso facto, invalidate the Hillcrest Colony facility's status as an "operating school" for purposes of § 20-6-105(1)(a)(iii), MCA . . . . The Hillcrest Colony facility is currently operating as a public elementary school.

¶14 In *McKirdy v. Vielleux*, 2000 MT 264, ¶ 21, 302 Mont. 18, 19 P.3d 207, this Court was faced with the validity of a single petition seeking transfer of territory for both a high

7

school and an elementary school under a statute providing that a high school territory petition "must be accompanied by a petition to transfer the same territory as elementary territory in accordance with [§] 20-6-213, [MCA]," in the absence of such a separate petition. Approving the combined petition, we reasoned that "this Court has refused to abide by such a strict, formalistic approach to statutory interpretation, and have readily applied the maxim: 'The law respects form less than substance,' pursuant to § 1-3-219, MCA." *McKirdy*, ¶ 35.

¶15 Similarly, we conclude upon the record of this case, including that the Attendance Center was approved by local school authorities and approved for funding by state school authorities, staffed with school employees, funded with public resources, regulated under state[3] and federal law, and opened to all qualifying students, that it was "established and maintained under the laws of the state of Montana at public expense." Section 20-6-501, MCA. To conclude that a school was not established here by the lack of a vote by the county commissioners, who do not exercise direct supervision over public schools, and the lack of formal approval by the state superintendent, when that office approved the Attendance Center *de facto* by funding and regulating it, would truly elevate form over substance. The record evidence clearly establishes the substance of the matter—the

---

[3] The Dissent posits that "the Attendance Center could not have been accredited under State law" because it was not properly opened as a school. Dissent, ¶ 12. The record is devoid as to the Attendance Center's accreditation status as of the 2013-2014 year because it opened at the same time that OPI was in the data collection phase for the accreditation process for that year. However, the record indicates that "Hillcrest Colony Elementary" was granted regular accreditation status for the 2014 school year, as attested to by a certificate signed by the Superintendent of Public Instruction.

Attendance Center is fully functioning as a public school and providing "for the teaching of children." Section 20-6-501, MCA.

¶16 The District Court correctly held that the superintendent panel did not abuse its discretion or otherwise err as a matter of law in interpreting the governing statutes.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

Justice Laurie McKinnon, dissenting.

¶18 I respectfully dissent from the Court's opinion. I cannot agree with the Court that the Attendance Center was a "school" within the meaning of § 20-6-105(1)(a)(iii), MCA. Pursuant to § 20-6-501, MCA, before a learning facility may be classified as a "school" it must be "established . . . under the laws of the state of Montana at public expense." Once established in accordance with State law, a learning facility is entitled to all the benefits and protections of a school under Montana law, including the availability of funding, accreditation, and protection against land transfers within the district. Sections 20-9-313, 20-7-102(1), (2), 20-6-105, MCA.

9

¶19 The Legislature has specifically provided a process under which a new elementary school is established. Section 20-6-502, MCA, et seq. That process includes seeking and obtaining approval from the board of county commissioners and the superintendent of public instruction. Sections 20-6-502(3), (4), MCA. In this regard, the Vaughn School Trustees failed to follow the applicable law for establishing a new elementary school. The Vaughn School Trustees neither sought, nor obtained, approval from the Cascade Board of County Commissioners or the Montana Superintendent of Public Instruction to open a new elementary school. Because the Trustees failed to establish the Attendance Center as a new elementary school under the laws of the State of Montana, the Attendance Center cannot be considered a school. To conclude otherwise would be tantamount to disregarding the plain language of the statutory scheme and omitting language that the Legislature inserted. Section 1-4-101, MCA.

I.

¶20 The statutory scheme unambiguously requires the board of county commissioners to approve the opening of a new elementary school. The initial step in establishing a new elementary school is for the parents of the students of the prospective school to submit a petition. Section 20-6-502(1), MCA. If the trustees approve the petition, § 20-6-502(3), MCA, provides that the trustees "shall present the petition, the trustees' approval, and the county superintendent's findings" on the parents' petition to the "board of county commissioners for their consideration." The county commissioners shall deny the opening if the anticipated enrolment is less than two pupils. Section 20-6-502(3), MCA.

10

"In all other cases," § 20-6-502(3), MCA, states that it is within the county commissioners' discretion to "approve or disapprove the requested opening or reopening of the elementary school." The statutory scheme is clear that the county commissioners' approval is necessary to establish an elementary school. The Legislature has vested them with this power under Montana law.

¶21 Although it is not this Court's function to question the wisdom of the Legislature, the Legislature is not without a policy justification for providing the commissioners with their power over the opening of a new elementary school. The county commissioners are directly responsible for financing schools in Montana. While the trustees control the budget process in a school district, the trustees are without taxing authority. It is the county commissioners who actually levy the required mills for the budget. Section 20-9-131(3), MCA, provides that after the adoption of the final budget for the school district, the trustees "shall deliver the adopted budget, including the amounts to be raised by tax levies, to the county superintendent," to be placed before the county commissioners. Section 20-9-142, MCA, then requires the county commissioners "to fix and levy on all the taxable value of all the real and personal property within the district all district and county taxation required to finance, within the limitations provided by law, the final budget."

¶22 The process for funding the transportation fund for a school district, which is a county based fund used to pay for the costs of getting students from home to school and back, operates in much the same way, with the exception that the transportation fund is

11

controlled by a county transportation board made up of five members, including the county superintendent and a county commissioner. Section 20-10-131, MCA. Like the final budget for a school, the levy required for the final budget for the county transportation fund "must be made by the county commissioners in accordance with 20-9-142." Section 20-10-144(5), MCA.

¶23 Based upon this statutory scheme, it is clear that the county commissioners have a genuine interest in deciding whether a new elementary school is established. It is the county commissioners who will ultimately levy the taxes for its formation and the transportation of its students. And it is the commissioners who will no doubt be held accountable by taxpayers for the creation of the new school and the corresponding tax increases. The statutory scheme allows the commissioners one substantive opportunity to exercise their power over the funding of a new school for which they are responsible—this comes at the time the school is to be established pursuant to § 20-6-502, MCA. After the school is established, the county commissioners must levy the required taxes to fund and provide transportation for the new school. In short, the Legislature vested the board of county commissioners with their power for good reason.

II.

¶24 The statutory scheme also unambiguously requires the superintendent of public instruction to approve the opening of a new elementary school. Section 20-6-502(4), MCA, provides that "[i]f the board [of county commissioners] approves a school opening" the trustees must provide "a copy of the approval, along with the petition, the

12

trustees' approval, and the county superintendent's estimate of the probable [number of students], to the superintendent of public instruction." Section 20-6-502(4), MCA, further provides that the "superintendent of public instruction shall approve or disapprove the requested opening or reopening of the elementary school by the fourth Monday of June." Here again, the statutory scheme is clear: the superintendent of public instruction's approval is necessary to establish an elementary school.

¶25 Nonetheless, the Court concludes that the superintendent of public instruction's approval is unnecessary in this case because the office of public instruction (OPI) "approved the Attendance Center *de facto* by funding and regulating it." Opinion, ¶ 15. First, the statutory scheme by its plain terms expressly requires the superintendent of public instruction, not OPI officials, to approve an elementary opening. The "superintendent of public instruction" is defined as the "state government official designated as a member of the executive branch by the Montana constitution." Section 20-1-101(24), MCA. The OPI is defined separately under § 90-14-105, MCA. The Montana Constitution requires that the superintendent of public instruction be "elected by the qualified electors at a general election" and vests the superintendent of public instruction with all "duties as are provided by law." Mont. Const. art. VI, §§ 2, 4. The Legislature does not use the terms "superintendent of public instruction" and "office of public instruction" interchangeably within the statutory scheme and defines their

13

respective powers and duties separately.[1] Had the Legislature intended OPI officials to have the power to approve an elementary school opening, instead of the superintendent of public instruction, it could have easily stated as much. The approval of OPI is no substitute for the exercise of actual authority by the superintendent of public instruction.

¶26 Second, the Court's statement that OPI "approved the Attendance Center *de facto* by funding [it]" is inherently misleading. While OPI did release funding to the Vaughn School District for additional students, it did not do so because of the opening a new elementary school. The Attendance Center did not receive any funding from OPI in its own name as a newly cast elementary school. Rather, OPI released additional funding to the Vaughn School District because the Vaughn School Trustees claimed an unusual increase of students at the already existing Vaughn Elementary School.

¶27 Section 20-9-313, MCA, permits a school district to seek increased funding from OPI for additional students under limited circumstances. For purposes of the present case, there are two relevant subsections of § 20-9-313(1), MCA, which permit OPI to release increased funding for additional students: subsection (a) and subsection (d). Subsection (a) provides that funding may be increased when "the opening of a new elementary school or the reopening of an elementary school has been approved in accordance with [§] 20-6-502." Subsection (d) provides that funding may be increased in

---

[1] For instance, *compare* § 20-1-401(3), MCA ("The trustees shall certify to the *office of public instruction* that a school safety plan or emergency operations plan has been adopted.") *with* § 20-1-301(3), MCA ("[T]he *superintendent of public instruction* shall reduce the direct state aid for the district for that school year by two times an hourly rate, as calculated by the *office of public instruction*, for the aggregate hours missed.") (Emphasis added.).

other unusual circumstances, such as the creation of a new mining operation, when "a district anticipates an unusual enrollment increase in the ensuing school fiscal year." The manner of computation of funding and the requisite procedures to obtain funding under subsection (a) and subsection (d) are not the same. *See* Sections 20-9-313, 314, MCA.

¶28 In the present case, the Vaughn School Trustees did not seek funding under § 20-9-313(1)(a), MCA, but instead applied for funding under § 20-9-313(1)(d), MCA. The application form for additional funding submitted by the Vaughn School Trustees clearly described the different categories for requesting funding and the procedures to be followed for obtaining such funding, including an explanation that the procedures under subsection (a)—for obtaining funding for the opening of a new elementary school—and the procedures under subsection (d)—for obtaining funding for an unusual enrollment increase at an existing elementary school—were statutorily different. Yet, the Vaughn School Trustees opted to apply for funding under subsection (d) and follow the requisite procedures applicable to that subsection. And it was under that subsection that OPI provided funding to the Vaughn School District. The release of taxpayer dollars to the Vaughn School District under § 20-9-313(a), MCA—absent the Attendance Center being "approved in accordance with [§] 20-6-502," MCA—would have been a clear violation of State law. Section 20-9-313(1), MCA. Make no mistake about it, the Montana Superintendent of Public Instruction, nor anyone in her office, approved any funding to the Vaughn School District for additional students based on the opening of a new elementary school at the Hillcrest Colony.

15

¶29 Lastly, there is no evidence in the record showing that OPI regulated the Attendance Center as a school under State law during the 2013-2014 school year. The only evidence in the record concerning past accreditation is the Vaughn Elementary School's accreditation status. There is simply no accreditation data for the Attendance Center in the record.[2] More importantly, the Attendance Center could not have been accredited under State law. A learning facility must be established in accordance with § 20-6-502, MCA, before it can be accredited. Sections 20-7-102(1), (2), MCA, provide that "each elementary *school* . . . must be reviewed by the superintendent of public instruction to determine compliance with the standards of accreditation"; the "accreditation status of each *school* must then be established"; and only a "*school* may be accredited . . . ." (Emphasis added.). The Superintendent of Public Instruction could not have properly accredited the Attendance Center because the Vaugh School Trustees did not open the Attendance Center as a school in accordance with § 20-6-502, MCA.

---

[2] The Court concedes that the "record is devoid as to the Attendance Center's accreditation status as of the 2013-2014 year," but nonetheless argues that the Attendance Center "was granted regular accreditation status for the 2014 school year, as attested to by a certificate signed by the Superintendent of Public Instruction." Opinion, ¶ 15 n.3. First, because the taxpayers here sought to transfer the land in 2013, the relevant inquiry is whether the Attendance Center was a "school" within the meaning of § 20-6-105(1)(a)(iii), MCA, in 2013, not 2014. Thus, whether the Attendance Center later became a "school" is irrelevant. Second, the "certificate" the Court relies on to show that the Attendance Center was later accredited is not part of the record. "[I]t is axiomatic that evidence must be introduced for admission at a trial or hearing by a party. Evidence does not simply make its way into the record unless and until it is offered." *In re Adjudication of Existing Rights In the North End Subbasin of the Bitterroot River*, 1999 MT 202, ¶ 12, 295 Mont. 447, 98 P.3d 151. The Vaughn School District did not introduce the certificate into the record before the Territory Transfer Panel during the evidence phase of this case. The certificate was merely attached to the Vaughn School District's brief on appeal to the District Court. The Court's reliance on the document is improper.

16

## III.

¶30 The Legislature designed a statutory scheme in which the board of county commissioners and the superintendent of public instruction approve the opening of a new elementary school. Once established in accordance with State law, the Legislature permitted the new elementary school to seek funding, obtain accreditation, and protect itself against land transfers. The Court today fundamentally alters that design. The Court's decision permits a school to be established in an entirely different manner than the one provided by law. Local school trustees may now sidestep elected officials; seek funding under the pretext of an unusual enrollment increase in an existing school; and, as long as OPI grants funding of some type, establish a new elementary school. This is not the system the Legislature adopted when it passed § 20-6-501, MCA, et seq.

¶31 The Court's decision ultimately rewards the failure to follow State law. The Vaughn School Trustees are now entitled to all the benefits and protections that come with a new elementary school. The Cascade County Commissioners must now levy taxes to support the Attendance Center; the Montana Superintendent of Public Instruction must now fund and accredit the Attendance Center; and the Power Elementary School District is now prohibited from transferring land within three miles of the Attendance Center.

¶32 The Legislature vested the Cascade Board of County Commissioners and the Montana Superintendent of Public Instruction with the collective authority to establish a new elementary school in Cascade County. It is not this Court's function to divest elected officials of power that has been properly granted to them by the Legislature. The

17

Vaughn School District failed to obtain the requisite approval to open a new elementary school under the laws of the State of Montana. I would accordingly conclude that the Attendance Center was not established as an elementary school under the laws of the State of Montana.

¶33  I dissent.

/S/ LAURIE McKINNON