No. 14201

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

IN THE MATTER OF THE ESTATE OF

WILLIAM MAGELSSEN, Deceased.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Church, Harris, Johnson and Williams, Great Falls, Montana
Douglas C. Allen argued, Great Falls Montana
George R. Crotty argued, Great Falls, Montana

For Respondent:

John M. Schiltz argued, Kalispell, Montana

---

Submitted:  October 20, 1978

Decided:  JUL 3 1979

Filed:  JUL 3 1979

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Paul McCann, the personal representative of the estate of William Magelssen, deceased, appeals from an order of the Yellowstone County District Court determining attorney fees owed to the law firm of Hutton, Sheehy and Cromley.

This case arose when Paul McCann petitioned the District Court, pursuant to section 91A-3-722, R.C.M. 1947, now section 72-3-634 MCA, for review of compensation owed to the attorneys for the estate, Hutton, Sheehy and Cromley. The District Court determined that the ordinary services of probate were 95 percent completed at date of discharge, and that, according to a contract of employment between Paul McCann and John C. Sheehy, the law firm agreed to handle the ordinary services to the estate for a fee of 3 percent of the estate valuation for federal estate tax purposes. Accordingly, the District Court held that the law firm was entitled to 95 percent of 3 percent of the estate value for federal estate tax purposes. Paul McCann appeals from this determination.

The facts giving rise to this controversy are as follows. William Magelssen died on September 17, 1976, leaving an estate valued in excess of three and one-half million dollars. His will named Julia Magelssen, his sister, and Paul McCann as co-personal representatives.

The co-personal representatives engaged John C. Sheehy and his firm, Hutton, Sheehy and Cromley, to provide legal services for them as co-personal representatives of the estate. Later, on October 11, 1976, the co-personal representatives had a meeting in which the attorney fees were discussed, and as a result of this meeting, attorney Sheehy wrote a letter confirming the conversation and the agreed

upon fee. The letter, dated October 13, 1976, read in pertinent part:

> "Also discussed was our attorneys' fee in connection with the handling of the estate. Paul reported that some heirs wanted to hold down the cost of administration, particularly the attorneys' fees. Paul also stated he could see a possible 'conflict of interest' when the valuation of the estate for inheritance taxes occurs. Nonetheless I stated that our firm would charge the full 3% of the value of the estate for federal estate tax purposes for the ordinary services to the estate."

There being no response to this letter, the law firm continued representing the estate with the understanding that the letter stated the agreed upon fee.

Eight months later, on June 17, 1977, McCann signed the federal estate tax return on which was recorded an amount for attorney fees, computed at 3 percent of the value of the estate appraised for federal estate tax purposes.

Julia Magelssen, one of the co-personal representatives, died on June 16, 1977, leaving Paul McCann as the sole personal representative. John C. Sheehy and his law firm continued to represent the estate of William Magelssen until July 27, 1977, when Sheehy and his law firm were discharged by McCann because of personal differences existing between McCann and attorney Sheehy. After the discharge, Paul McCann petitioned the court pursuant to section 91A-3-722, R.C.M. 1947, now section 72-3-634 MCA, to review the attorney fees charged by Sheehy and his law firm. Pursuant to this petition the court held an evidentiary hearing.

At trial, attorney Sheehy and his partner, George Hutton, testified on the work already performed for the estate and that which remained to be done. Attorney Hutton testified that, in his opinion, very little work remained to be done. Attorney Bjarne Johnson, who testified on be-

half of the personal representative, stated that there was a significant amount of work yet to be completed. Needless to say, there was significant disagreement between Sheehy and Hutton on the one hand and Bjarne Johnson on the other hand, as to what constituted ordinary services and the complexity of the work entailed.

During the course of the hearing Paul McCann moved to require attorney Sheehy to testify as to the precise number of hours that his firm had worked on the estate of William Magelssen, but the court refused to admit this evidence and also refused to admit evidence on the number of hours needed to complete the estate. The District Court took judicial notice of the documents prepared and already filed as part of the estate proceedings and of other activities engaged in by the attorneys on behalf of the estate.

The court ruled that a contract for compensation was contained in the October 13, 1976 letter from Sheehy to McCann, and that this contract was later ratified by McCann in signing the estate tax return which specified the same fee to be paid. The contract was for ordinary services at a fee of 3 percent of the estate value as set for federal estate tax purposes. The court determined that the ordinary legal services for the estate were 95 percent completed, and set the fee on that basis. The fee was computed to be $106,464.42. The court order also provided for adjustment of this fee in the event the federal taxing authorities revised their valuation of the estate.

The personal representative makes several assignments of error. He contends first that a valid contract for attorney fees did not exist between the personal representatives and the law firm, and therefore the proper measure

of compensation should be based on *quantum meruit*. Secondly, he contends that the District Court did not apply the appropriate standard of review under section 91A-3-722, R.C.M. 1947, now section 72-3-634 MCA. Third, he contends that the evidence was not sufficient to sustain the judgment of the District Court.

The personal representative first attacks the alleged contract between him and the attorneys on the theory that a contract for fees entered into after the inception of the attorney-client relationship is void. The prevailing rule is that attorney fee contracts made after the establishment of the fiduciary attorney-client relationship are valid if they are "fair and equitable." See Annot., 13 A.L.R.3d 701, 710. Fairness is determined by taking account of such relevant factors as good faith and full-disclosure in the execution of the contract, the amount of the fee and the client's maturity, intelligence, and understanding of the transaction. Annot., 13 A.L.R.3d 701, 711; Daniels v. Paddock (1965), 145 Mont. 207, 222, 399 P.2d 740, 747; Coleman v. Sisson (1924), 71 Mont. 435, 443, 230 P. 582, 584. The burden of establishing fairness is on the attorney. Daniels v. Paddock, supra; 7 Am.Jur.2d Attorneys at Law, §267.

The record contains substantial evidence in support of the fairness of the agreed fee. The terms of the attorney's employment were made unequivocally clear in the October 13, 1976 letter. The personal representatives acknowledged receipt of the letter and, at trial, personal representative McCann testified that he understood the meaning of the letter. The representatives did not object to the specified fee arrangement for at least seven more months, during which time the attorneys continued to perform legal

services for the estate. Moreover, at a later time, personal representative McCann signed the federal estate tax return on which the 3 percent fee was clearly stated. Nor does the evidence indicate that McCann was inexperienced in the ways of the world.

Personal representative McCann was an extraordinarily well-educated and experienced man. He testified that he is the officer of a major corporation, a certified public accountant and is licensed to practice law in two states, Illinois and North Dakota. He entered into the contract with his eyes open and with full awareness of the implications. We agree with the conclusion of the District Court that he ratified the fee agreement. Section 13-325, R.C.M. 1947, now section 28-2-503(2) MCA; Annot., 13 A.L.R.3d 701, 745.

Next, the personal representative argues that section 91A-3-722, R.C.M. 1947, now section 72-3-634 MCA, which provides for judicial review of attorney fees, imparts an "overriding consideration of reasonableness" that effectively invalidates the terms of any contract for probate-related services. This section provides:

> "Proceedings for review of employment of agents and compensation of personal representatives and employees of estate -- court to set disputed fee. Upon the filing of a motion for settlement of fees by the court filed by an interested person, the personal representative or the person employed by the personal representative and after notice to all interested persons, the propriety of employment of any person by a personal representative including any attorney, auditor, investment advisor or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, or the reasonableness of the compensation determined by the personal representative for his own services, shall be reviewed and determined by the court. In any dispute concerning fees, the court shall set the fee. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds."

The provision does not restrict the personal representative's capacity or freedom to contract, except that he may not contract for excessive fees. Nor can this section be read in isolation from other provisions of the probate code. Section 91A-3-713(21), R.C.M. 1947, now section 72-3-613(21) MCA, specifically authorizes the personal representative to employ, and therefore to contract for, the services of an attorney. Section 91A-3-720, R.C.M. 1947, now section 72-3-633 MCA, entitled "Compensation of Attorney" merely places a ceiling on the amount of compensation payable to an attorney for ordinary services. These provisions establish the boundaries of the personal representative's authority to contract for the services of an attorney. The fee involved in the instant case fits within these limits. Accordingly, the fee contract was valid under the applicable provisions of the Montana Uniform Probate Code.

Personal representative McCann next argues that attorney fees based on a fixed percentage of the estate value are against public policy because the attorney will inflate the value of the estate in order to increase his fee. This Court's duty is to construe the law as it is written. Section 93-401-15, R.C.M. 1947, now section 1-2-101 MCA. If no ambiguity exists in a statute, the letter of the law will not be disregarded under the pretext of pursuing its spirit. Vaughn & Ragsdale v. State Board of Equalization (1939), 109 Mont. 52, 60, 96 P.2d 420, 424. The statutory provision governing compensation of attorneys in estate matters is section 91A-3-702, R.C.M. 1947, now section 72-3-633 MCA. In pertinent part it states that "if the services of an attorney are engaged by the personal representative, the compensation of such attorney shall not exceed one and one

half (1 1/2) times the compensation allowable to the personal representative." The personal representative is allowed a "reasonable compensation" not to exceed 3 percent of the first $40,000 of the reported estate value and 2 percent of the value over $40,000. Section 91A-3-719, R.C.M. 1947, now section 72-3-631 MCA. We find no public policy in these applicable statutes that would invalidate a fee clearly coming within their terms.

We next discuss the question of whether the District Court's review of the attorney fees pursuant to section 91A-3-722 was proper. The personal representative contends that by invocation of this statute the District Court is required to fix a reasonable attorney's fee without reference to the terms of an existing contract. But we see no reason to totally ignore the terms of a contract between an attorney and the personal representative.

The following editorial comment appears under section 91A-3-722:

> "In view of the broad jurisdiction conferred on the probate court by section [91A-3-105], description of the special proceeding authorized by this section might be unnecessary. But, the code's theory that personal representatives may fix their own fees and those of estate attorneys marks an important departure from much existing practice under which fees are determined by the court in the first instance. Hence, it seemed wise to emphasize that any interested person can get judicial review of fees if he desires it. Also, if excessive fees have been paid, this section provides a quick and efficient remedy."

This comment focuses our attention of the provision's principal utility. It provides interested persons with judicial review to guard against excessive fees set by a personal representative in the exercise of his newly conferred discretion. It is a special, formal proceeding in which interested persons obtain a quick and effective remedy against excessive

-8-

compensation. Upon the filing of a petition under section 91A-3-722, the District Court must determine if the compensation paid is excessive in light of all the circumstances. In so doing, the court is not setting the fee, it is reviewing the fee arrangement. Naturally, the factors bearing on reasonableness of court-awarded attorney fees must be taken into account in determining if a particular fee is either excessive or reasonable. But under the probate code, it is the personal representative, not the court, who sets the fee in the first instance.

In explaining the national provision, Uniform Probate Code section 3-721, which is virtually identical to section 91A-3-722, the Uniform Probate Code Practice Manual states:

> "The Code's transfer of these matters to the personal representative in the first instance, with provision for review in the case of dispute should tend to promote prior agreement between those interested in estates, on the one hand, and those assisting in administrations, on the other. If more fee agreements result, disputes and complaints about fees will be fewer, whether the amounts involved remain the same, or are increased or decreased." Wellman, Uniform Probate Code Practice Manual, 2d Ed., Vol. 1, p. 322.

It is clear that a court, when reviewing a fee agreement under a substantially performed contract, cannot blind itself to the terms of the contract and make its own determination of what is reasonable.

In the present case, the District Court determined that section 91A-3-713(21) (which empowers the personal representative to employ an attorney) and section 91A-3-722 (which allows the court to review the employment of attorneys and their fees), must be construed together so as to give effect to each provision and make them compatible with each other.
                                                    District
Applying this standard, the/ Court found the amount of the

-9-

fee to be reasonable on its face as it was within the limits of compensation provided for in sections 91A-3-719, R.C.M. 1947, now section 72-3-631 MCA, and section 91A-3-720, R.C.M. 1947, now section 72-3-633 MCA. After determining that the services were substantially performed, the court concluded that its task was to apportion the agreed compensation according to the percentage of ordinary services completed by the attorneys as of the date of their discharge.

On the other hand, the personal representative contends that once an attorney is discharged, he can only be compensated on the basis of quantum meruit, whereby recovery is limited exclusively to the reasonable value of services rendered on an hourly basis. Again, he would have the court totally disregard the substantially performed contract between the personal representative and attorney. We note moreover that section 91A-3-722 sets forth no such measure of compensation.

As indicated previously, the personal representative can contract for an attorney's services (section 91A-3-713(21)) and under section 91A-3-808, R.C.M. 1947, now section 72-3-612 MCA, the estate is bound by such contracts. Though the fee contract is open to review under section 91A-3-722, R.C.M. 1947, now section 72-3-634 MCA, the amount of the fee is not automatically converted into a quantum meruit measure of compensation. Indeed, quantum meruit compensation is normally appropriate only where a valid contract does not exist. 7 Am.Jur.2d Attorneys at Law, §232; Harris v. Root (1903), 28 Mont. 159, 72 P. 429.

We emphasize that this is not a case of attorney fees assessed against an opposing party and awarded by the court pursuant to a statute. In such case, the court determines

the reasonableness of the fee in the first instance, and this Court disapproves reliance on contingency fee contracts in setting the fee. See e.g., State Department of Highways v. Schumacher (1979), ____ Mont. ____, 590 P.2d 1110, 36 St.Rep. 260, 266; State Highway Commission v. Marsh (1978), ____ Mont. ____, 575 P.2d 38, 43, 35 St.Rep. 105, 110. In this case, however, the personal representative requested judicial review and determination of compensation due under a valid, substantially performed contract for services. Under these circumstances the court must act as both finder of fact and as arbiter between contractually bound parties. We do not believe that section 91A-3-722 was intended to permit competent, fully informed personal representatives to disavow their otherwise enforceable contracts for an attorney's services.

Considering the principal purpose of section 91A-3-722 and the exceptional circumstances surrounding its invocation in this case, the District Court did not err in refusing quantum meruit as the measure of compensation. The court's threshhold determination of reasonableness, followed by an apportionment of the agreed fee to the percentage of the job completed, was proper.

Based on these factors, we see no error in the exclusion of evidence as to the attorney's actual time expended in probate. We note in this regard that the time factor has, generally speaking, played a relatively minor role in determination by a court of reasonable attorney fees in probate. See Annot., 58 A.L.R.3d 317, 325; 7 Am.Jur.2d Attorneys at Law, §238; In re Estate of Wood (Ohio App. 1977), 379 N.E.2d 256, 261. In this case, the District Court was fully advised as to the work completed in relation to the work that

remained to be done. Although we consider time actually spent on probate services to be relevant to a determination of reasonableness, we do not find its exclusion under the facts of this case to be reversible error.

Nor do we find reversible error in the District Court's provision allowing an adjustment of the attorney fees in the event the estate value is later revised upward or downward by the federal taxing authorities. The agreed upon consideration for the attorney's services was 3 percent of the estate value for federal estate tax purposes. Fixing the fee in proportion to that value was consistent with the intent of the contracting parties.

The last issue raised by the personal representative is that the evidence did not support a finding that the contract was 95 percent completed at the time of the attorney's discharge. He contends there is substantial work that remains to be done. We note that the attorney contracted to perform the "ordinary services" for the estate. The evidence at trial was conflicting as to whether the work remaining to be done was of an "ordinary" or "extraordinary" nature. It was the court's factual determination which finally settled on the finding of 95 percent completion. We will not substitute our judgment for that of the trial court where there was substantial evidence to support a finding of fact. Kosmerl v. Barbour (1979), ____ Mont. ____, 589 P.2d 1017, 1019, 36 St.Rep. 210, 212-13; Gross v. Holzworth (1968), 151 Mont. 179, 185, 440 P.2d 765, 768. The District Court heard testimony from both sides and was not without its own knowledge on estate matters in general and this estate in particular.

The judgment of the District Court is affirmed.

Daniel J. Shea
Justice

-12-

We Concur:

_Frank J. Haswell_
Chief Justice

_Gene B Daly_

_John Conway Harrison_
Justices

_Joel G Roth_
Hon. Joel G. Roth, District
Court Judge, sitting in for
Mr. Justice John C. Sheehy