*497 JUSTICE NELSON
dissents.
¶24 The Court violates one of the most elemental blackletter and jurisprudential laws of this State in its Opinion.
In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.
Section 1-2-101, MCA; City of Billings v. Gonzales, 2006 MT 24, ¶ 13, 331 Mont. 71, ¶ 13, 128 P.3d 1014, ¶ 13.
¶25 Section 61-8-406, MCA, the DUI “per se” statute, provides:
(1) It is unlawful and punishable as provided in 61-8-442,61-8-722, 61-8-723, and 61-8-731 through 61-8-734 for any person to drive or be in actual physical control of:
(a) a noncommercial vehicle upon the ways of this state open to the public while the person's alcohol concentration, as shown by analysis of the person's blood, breath, or urine, is 0.08 or more .... [Emphasis added.]
The plain and unambiguous language utilized by the Legislature in this statute requires the measurement of alcohol concentration to relate to the time of driving.
¶26 To the contrary, however, the driving under the influence or DUI statute, § 61-8-401, MCA, provides, in pertinent part:
(1) It is unlawful and punishable, as provided in 61-8-442, 61-8-714, and 61-8-731 through 61-8-734, for a person who is under the influence of:
(a) alcohol to drive or be in actuad physical control of a vehicle upon the ways of this state open to the public;
(4) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time of a test, as shown by analysis of a sample of the person's blood or breath drawn or taken within a reasonable time after the alleged act, gives rise to the following inferences:
(a) If there was at that time an alcohol concentration of 0.04 or less, it may be inferred that the person was not under the influence of alcohol.
(b) If there was at that time an alcohol concentration in excess of 0.04 but less that 0.08, that fact may not give rise to any inference that the person was or was not under the influence of *498 alcohol, but the fact may be considered with other competent evidence in determining the guilt or innocence of the person.
(c) If there was at that time an alcohol concentration of 0.08 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable. [Emphasis added.]
Unlike theper se statute, § 61-8-406, MCA, the DUI statute clearly and unambiguously allows the admission of evidence of alcohol concentration to be taken “within a reasonable time after the alleged act.”
¶27 We need do nothing more in this case than follow the law as articulated by the Legislature and the rules of statutory construction set out in Title 1, Chapter 2, Montana Code Annotated. Indeed, it is this Court’s “duty ... to construe the law as it is written.” In re Estate of Magelssen (1979), 182 Mont. 372, 378, 597 P.2d 90, 94 (citing § 1-2-101, MCA). Moreover, “[i]n the construction of a statute, the intention of the legislature is to be pursued if possible.” Section 1-2-102, MCA. In ascertaining the Legislature’s intent, “it is beyond dispute that... we are bound by [the] plain and unambiguous language used in a statute and may not consider legislative history or any other means of statutory construction.” McKirdy v. Vielleux, 2000 MT 264, ¶ 22, 302 Mont. 18, ¶ 22, 19 P.3d 207, ¶ 22 (citing MacMillan v. State Compensation Ins. Fund (1997), 285 Mont. 202, 208, 947 P.2d 75, 78). “If no ambiguity exists in a statute, the letter of the law will not be disregarded under the pretext of pursuing its spirit.” Magelssen, 182 Mont. at 378, 597 P.2d at 94 (citing Vaughn & Ragsdale v. State Board of Equalization (1939), 109 Mont. 52, 60, 96 P.2d 420, 424).
¶28 The Court’s decision in the instant case is devoted primarily to justifying adding to theper se statute language which the Legislature chose not to use-that the measurement of alcohol concentration for purposes of the per se statute can be determined not while the person is driving, as that statute clearly requires, but rather, within a reasonable time after the stop.
¶29 The Court, again in justification of its violation of the rules of statutory construction, posits that to not add language to the statute would produce “absurd results” and implies that the Legislature passed “meaningless legislation.” Neither is true. In point of fact, it is possible for the State to provide, by retrograde extrapolation, evidence of a person’s blood alcohol concentration at the time of driving.
¶30 In this case, the State did not offer such evidence. Unfortunately, this Court seems to feel it necessary to save the State from its own failure to present sufficient evidence at trial supporting the charge *499 made against McGowan.
¶31 Here, the critical element of the State’s case was McGowan’s blood alcohol concentration at the time he was driving. The only evidence presented was that his blood alcohol concentration fifty minutes after he was driving was 0.092%. The State presented no evidence relating McGowan’s blood alcohol concentration back to the time he was driving his vehicle. Accordingly, it is not known whether his alcohol concentration was higher, lower, or the same as at the time he was driving his vehicle. Without that information, under the plain language of the per se statute, there was not sufficient evidence to support the verdict. McGowan’s per se conviction should be reversed.
¶32 In his brief on appeal, McGowan cites persuasive authority from sister jurisdictions in support of his argument that, under a per se type statute requiring the determination of alcohol concentration at the time of driving, tests after that time do not accurately reflect the content of blood alcohol concentration at the time of driving. See, e.g., Commonwealth v. Jarman (Pa. 1992), 601 A.2d 1229; Conrad v. State (Alaska Ct. App. 2002), 54 P.3d 313; Douthitt v. State (Tex. Ct. App. 2004), 127 S.W.3d 327.
¶33 In Conrad, the court stated:
It appears that the Alaska Legislature would have the authority to define the offense in terms of the defendant's test result at a test administered within a specified time after the defendant operated or controlled a motor vehicle-even though the test result might be higher than the defendant's blood alcohol level at the time the defendant operated or controlled the vehicle. Our review of case law and statutes from other jurisdictions reveals that a number of state legislatures have done this.
In these states, however, the statutes clearly specify that a defendant's guilt rests on the test results and that the defendant's actual breath or blood alcohol content at the time of driving is not an element.
Conrad, 54 P.3d at 315 (footnote omitted).
¶34 Similarly, in Douthitt, the court observed:
[A] drinker's alcohol concentration describes a curve that rises as the alcohol is absorbed, peaks at some point after drinking stops, and then declines as the alcohol is eliminated. If a driver is tested for alcohol concentration while he is still in the absorption phase, his alcohol concentration will be higher than it was when he stopped driving. If he is in the elimination phase when tested, his alcohol concentration could be either higher or lower than while *500 driving, depending on when he reached his peak concentration. The greater the time between driving and the test, the greater the potential variation between the alcohol concentration when driving and the subsequent test result.
Douthitt, 127 S.W.3d at 333 (internal citations omitted).
¶35 Our sister courts are obviously willing to do what we are unwilling to do-simply enforce the plain language of Montana’s per se statute and not read into it language from our DUI statute. Montana’s blackletter and jurisprudential law directs that we simply ascertain and declare what is in terms or in substance contained in the per se statute and not to insert language which has been omitted from it. Section 1-2-101, MCA.
¶36 The majority asserts that at least one of the jurisdictions to which this dissent cites has changed course and now rejects the notion that the State needs to present retrograde extrapolation evidence to support convictions under DUI per se type statutes. The case the majority cites for this proposition is Commonwealth v. Yarger (Pa. 1994), 648 A.2d 529.
¶37 In Yarger, the Supreme Court of Pennsylvania did hold that the state was not required to present expert testimony as to the defendant’s blood alcohol level while driving. The court noted that the blood alcohol level of the defendant in Yarger was 0.18%, significantly above the 0.10% threshold, and that the lapse of time between when the defendant was driving and when he submitted to the test was only forty minutes. The court determined that these two factors distinguished this case from previous cases where extrapolation evidence was required. Yarger, 648 A.2d at 531.
¶38 In addition, the court in Yarger noted that the statute relied on in that case had been amended between the time of the offense and the court’s decision. Yarger, 648 A.2d at 531 n.2. Unlike Montana’s DUI per se statute, the amended Pennsylvania statute provides that the test may be obtained within three hours after the person drove, operated or was in actual physical control of the vehicle. 75 Pa.C.S. § 3731(a)(5). Hence, there was no reason for the Yarger court to read into the Pennsylvania statute information that it did not contain as the majority attempts to do in McGowan.
¶39 The majority asserts that the Pennsylvania Supreme Court did not premise its holding in Yarger upon this legislative revision. While it is true that the Yarger court did not state that it premised its holding on the legislative revision, it is also true that the court did not state that it totally disregarded the legislative revision. Because the court *501 made a point of mentioning the legislative revision in its decision, it is impossible to tell how much influence the legislative revision had on the court’s decision.
¶40 Furthermore, in response to this dissent’s citation to Doutthit, the majority concedes that no court in Texas has yet to hold explicitly that the state is not required to present retrograde extrapolation analysis testimony. Nevertheless, the majority states that several Texas courts have admitted the results of alcohol concentration tests in the absence of such testimony. One such case cited by the majority is Stewart v. State (Tex. Crim. App. 2004), 129 S.W.3d 93. In Stewart, the Texas Court of Criminal Appeals did reverse a lower court ruling that breath test results are inadmissible without retrograde extrapolation evidence. However, the majority fails to mention that in so holding, the court in Stewart noted that it reversed the lower court on the basis of relevancy, not on the sufficiency of the evidence necessary to sustain a conviction. Stewart, 129 S.W.3d at 98. As the concurring opinion in Stewart states,
because of the peculiar posture of this appeal, [Stewart] does not resolve the problem that faces trial courts: whether to admit breath-test results without extrapolation evidence. This appeal presents only half of the problem, relevancy.... [Tjhere are serious issues about the other half, weighing the relevancy value against possibly unfair prejudicial effect.
Stewart, 129 S.W.3d at 98 (Womack, J., concurring).
¶41 While the majority cites a few cases from various jurisdictions supporting the proposition that the use of retrograde extrapolation evidence is not necessary, there are jurisdictions that still require the introduction of retrograde extrapolation evidence. In State v. Ladwig (S.D. 1989), 434 N.W.2d 594, the trial court denied the defendant’s motion to dismiss the charges against him on the ground that the State failed to introduce sufficient evidence to establish that he had been driving with a blood alcohol content of 0.10% or more. On appeal, the Supreme Court of South Dakota reversed the trial court because the State
failed to establish that [the defendant’s] blood alcohol content was 0.10 percent or greater at the time he was driving his vehicle. Rather, State merely produced evidence of [the defendant’s] blood alcohol content at the time his blood was drawn without any attempt to extrapolate or relate the test results back to the time he was driving.
Ladwig, 434 N.W.2d at 595-96 (emphasis in original).
*502 ¶42 Likewise, in State v. Rollins (Vt. 1982), 444 A.2d 884, 886-87, the Supreme Court of Vermont stated:
[T]o fulfill its burden of proof, the prosecution must do more than offer the requisite chemical test. The State must also establish that the .10% level existed at the time of operation. In this case, it was incumbent upon the prosecution to relate back the .24% reading from 9:14 p.m. (time of the test) to 7:45 p.m. (last time of operation). Thus, any evidence relevant to whether the 9:14 p.m. reading accurately reflected the defendant’s blood alcohol level at 7:45 p.m. was not only admissible, but indispensable to the prosecution’s case.
¶43 Finally, rather than reading into Montana’s DUI per se statute provisions that are not there, a better approach would be that of the Arizona Supreme Court who continued to require retrograde extrapolation evidence until the Arizona legislature amended its motor vehicle statutes to allow for the admissibility of BAC tests taken within two hours of driving. Prior to the amendment of the statute, the Arizona Supreme Court held that the results of an intoxilyzer test taken within a reasonable time after arrest were admissible to show the presence of alcohol in the blood, but not the percentage. Desmond v. Superior Court of Maricopa County (Ariz. 1989), 779 P.2d 1261, 1266-67. To apply the statutory presumption that the driver was under the influence of intoxicating liquor if the percentage of alcohol concentration in his blood or breath exceeded 0.10%, the court determined that there must be testimony relating the BAC back to the time of the arrest. Desmond, 779 P.2d at 1267.
¶44 The majority does a yeoman’s job of explaining all the reasons why retrograde extrapolation is too hard, too inconvenient or will not, otherwise, work. If that is true, then the solution is simple. Interpret the statute as it is written and let the branch of the government that wrote the legislation rewrite and fix the offending language. It is this kind of activism that gives traction to those who criticize courts as acting as super-legislatures. It is precisely what the majority have done here.
¶45 By reason of our unwillingness to follow the law, I dissent.
JUSTICE COTTER joins in the foregoing dissent of JUSTICE NELSON.